Curtis Lee THOMPSON, Petitioner,

v.

Linda REIVITZ and Franklin Lotter, Respondents.

Civ. A. No. 83–C–102.

United States District Court, E.D. Wisconsin.

March 29, 1983.

Mary E. Waitrovich, Asst. State Public Defender, Madison, Wis., for petitioner.

Bronson C. La Follette, Atty. Gen. by Jeffrey M. Gabrysiak, Asst. Atty. Gen., Madison, Wis., for respondents.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This action arises on a petition for a writ of habeas corpus. The petitioner was on probation until 1980 when his probation was revoked. This revocation was reversed by the Wisconsin Supreme Court. The Department of Health and Social Services has initiated new probation revocation proceedings in which the petitioner is alleged to have violated his conditions of probation through the same conduct that the Wisconsin Supreme Court found not supported by sufficient evidence in the 1980 revocation proceedings. Petitioner claims that the new revocation proceedings violate his due process rights.

On Friday, January 28, 1983, the Court heard argument on the petitioner's motion for a preliminary injunction ordering the state to continue petitioner's probation and staying the new revocation proceeding pending the outcome of this case. At that hearing, the Court indicated that on the basis of what had been presented, the Court was not prepared to rule from the bench that the preliminary injunction should issue. A briefing schedule on the petition was established. The issues have now been fully briefed and are ready for decision.

## FACTS

Petitioner Thompson was convicted of burglary on October 9, 1978, and was sentenced to three years probation with six months in the Milwaukee County Jail as a condition of probation. On July 13, 1980, Thompson was involved in a fight with his brother which resulted in Thompson stabbing his brother once with a kitchen knife. The wound proved fatal. Thompson originally was charged with manslaughter, but the charge was later reduced to homicide by reckless conduct. Without stating its reasons, the state moved to dismiss all charges against Thompson on January 7, 1981.

Petitioner has been held in custody because of the probation revocation proceedings continuously since July of 1980. On October 29, 1980, a hearing examiner ordered the petitioner's probation revoked. He found that the petitioner had violated the conditions of probation by being uncooperative with his probation supervisors, by being involved in criminal activity and by possessing a weapon (the kitchen knife) without permission. The Wisconsin Supreme Court, on December 2, 1982, held that the revocation proceeding violated the petitioner's fourteenth amendment due process rights in two respects: 1) he was not given notice of the total extent and nature of the alleged probation violations against him, namely, the allegations that he

did not cooperate with his probation supervisors; and 2) there was insufficient evidence to show that the petitioner had used excessive force in defending himself and thereby committed a crime. The Supreme Court further referred to the finding regarding improper possession of a weapon as "sophistry."

The Supreme Court held that reversal was the proper remedy, not remand. They relied on their holding in *Snajder v. State*, 74 Wis.2d 303, 246 N.W.2d 665 (1976) where they "held it improper to remand for the purpose of supplementing the evidence in support of revocation." However, the Court later added a sentence stating: "If the department believes probation revocation is in order, it may seek a new petition for revocation and elicit additional evidence.[6]

---

[6] The department remains free to offer any probation record that was prepared pursuant to a probation official's regularly conducted duties or police investigative material if demonstrated to be reliable. It may also wish to offer testimony from agent Hovel [probation agent who took petitioner's statement regarding the stabbing] or from witnesses present at the stabbing incident."

The petitioner moved the Court to reconsider its decision asking that the above language be deleted. The motion was denied, though Justice Abrahamson filed a concurring opinion stating that she would delete the objected to language.

On January 6, 1983, the circuit court vacated the probation revocation order. However, the petitioner was never released from custody because of a probation hold. On January 11, 1983, the petitioner received notice that the Department would initiate new revocation proceedings based upon the same incident. On January 17, 1983, a preliminary hearing was held which found probable cause to believe that petitioner had violated his conditions of probation. The letter from the hearing examiner to petitioner dated January 19, 1983, confirmed that probable cause existed to believe that the petitioner had violated his

conditions of probation by his involvement in the stabbing incident. That letter makes no mention of failure to cooperate with probation supervisors.

## I. HABEAS EXHAUSTION REQUIREMENT

28 U.S.C. § 2254 requires that before a writ of habeas corpus issue in behalf of a person in state custody, it must appear "that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." The petitioner argues that no state court will hold that a second revocation hearing violates his due process rights because the state supreme court considered that issue on the petitioner's motion for reconsideration and rejected that argument. The defendant says that the supreme court's denial of the motion to reconsider merely amounts to dicta because the issue of a retrial of the revocation was not technically before them. Thus, the defendant argues, the lower state courts would not be bound by that language in the supreme court's decision.

In habeas cases in which the petitioner seeks relief from a second criminal trial claimed to violate the double jeopardy clause, courts have generally held that exhaustion does not require the defendant to undergo the second trial before filing his petition. In *United States v. Court of Common Pleas*, 516 F.2d 1034 (3d Cir.1975), a defendant was twice tried for a robbery. Each trial resulted in a mistrial. The defendant argued that the second mistrial was not manifestly necessary and so a third trial would violate his double jeopardy rights. The trial court denied the motion to dismiss based on double jeopardy, but directed the district attorney to reconsider whether this case should be prosecuted. By the time the district attorney indicated he would proceed, the defendant's time for requesting an interlocutory appeal of the denial of the motion to dismiss had passed. The defendant then sought a writ of prohi-

bition from the state supreme court, but was denied the writ without an opinion. He then filed a habeas petition with the district court. The district court denied the petition.

The Third Circuit held that "when a state prisoner properly demonstrates to a federal court that the state proceedings have denied him or are about to deny him certain federal constitutional rights, the federal court has the power to grant the writ." 516 F.2d at 1037. The court relied heavily on the nature of the constitutional interest at stake. Since the double jeopardy clause seeks to spare an accused from the rigors incident to a subsequent trial, an appeal of the retrial after the retrial occurred would not protect the constitutional interest alleged to be at stake. Thus, no more was required of the petitioner.

In a case similar to the Third Circuit's, the Seventh Circuit has held that where the double jeopardy challenge is brought before the defendant has stood even one trial, the balance of inconveniences tilts in favor of the state. *United States v. Circuit Court of Milwaukee County*, 675 F.2d 946 (7th Cir. 1982). In that case, the defendant pled guilty to two counts, then moved to dismiss the other two counts on double jeopardy grounds. The trial court denied the motion, and the court of appeals denied him leave to appeal.

The Seventh Circuit recognized and apparently agreed with the holding of other courts that have found state remedies exhausted for purposes of a double jeopardy habeas challenge when the petitioner has no where else in the state system to turn to get the charges dismissed *before trial*. However, the Seventh Circuit noted that those courts enjoined state criminal proceedings only because of the hardship of a second trial, which the double jeopardy clause protects against. "The decisions thus do not hold that pretrial habeas corpus is available in every case where a double jeopardy claim is asserted, regardless of the nature of the previous proceedings." 675 F.2d at 948. Since in their case there had been no first trial, enjoining the criminal

trial was improper, and the habeas challenge was premature.

The petitioner in this case claims that the due process clause protects him from being subjected to a second revocation proceeding based upon the same occurrences as the first revocation proceeding when the first revocation was reversed because of insufficient evidence. The constitutional interest allegedly at stake is the petitioner's interest in avoiding the rigors incident to the second revocation proceeding. The constitutional interest at stake and the state supreme court's decision to allow a second revocation proceeding constitute circumstances rendering state corrective processes ineffective to protect the rights of the prisoner. Therefore, this Court concludes that the exhaustion requirement of 28 U.S.C. § 2254 has been satisfied by the petitioner in this case.

This conclusion is not altered by the fact that the petitioner on February 11, 1983, filed a petition for a writ of habeas corpus in the Circuit Court for Milwaukee County. After being denied preliminary relief from this Court, it is not surprising that the petitioner would then seek relief from the state system. However, as indicated in petitioner's letter to the Court dated February 24, 1983, none of the issues before this Court have been raised in the state court habeas case. Nonetheless, given the decision of the Wisconsin Supreme Court in this case, review of petitioner's due process claims by the state courts would likely be ineffective.

## II. DUE PROCESS CLAIM

■ The due process clause of the fourteenth amendment to the United States Constitution applies to probationers facing revocation proceedings because a probationer's conditional freedom is a protected liberty interest. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973). The Seventh Circuit has held that an excessive delay preceding a final parole revocation hearing, or reliance on unproven charges or information outside the record may violate due process. *United States ex rel. Sims v. Sielaff*, 563 F.2d 821 (7th Cir. 1977). The petitioner argues that similarly,

a second probation revocation hearing based on the same charges as a prior revocation which was reversed because of insufficient evidence violates the due process clause.

■ The petitioner argues by analogy to the double jeopardy clause of the fifth amendment. The double jeopardy clause has been held applicable to the states through the fourteenth amendment due process clause. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The double jeopardy clause prohibits the retrial of a criminal case where the conviction has been reversed on appeal because of insufficient evidence. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). However, the double jeopardy clause applies only to criminal prosecutions. A probationer has a "more limited due process right" than an accused in a criminal proceeding. 411 U.S. at 789, 93 S.Ct. at 1763.

■ The only case cited by petitioner holding that the due process clause prohibits a second probation revocation proceeding in the circumstances of this case is *Snajder v. State,* 74 Wis.2d 303, 246 N.W.2d 665 (1976). In *Snajder,* parole was revoked because the parolee 1) falsified his residence address given to the parole agent, 2) refused to account for his presence at another address, and 3) failed to account for stolen property found at that other address. The circuit court found the evidence insufficient to support the second and third grounds for revocation. The supreme court held that the proper course was to remand solely to determine whether the first ground alone would support revocation. To remand to take additional evidence on the two charges for which the evidence in the initial hearing was insufficient would violate due process according to the Wisconsin Supreme Court.

In this case, the Wisconsin Supreme Court did not remand but permitted the Department of Health and Social Services to institute a second revocation proceeding based on the same charges as made in support of the revocation that was reversed because of insufficient evidence. Although this procedure technically differs from a remand, it achieves the same results proscribed by *Snajder.* The Department obtains an opportunity to take additional evidence on the charges for which the evidence in the initial hearing was held insufficient. This Court finds no distinction between this case and *Snajder.*

■ Nonetheless, this Court disagrees with the Wisconsin Supreme Court's holding in *Snajder* that the due process clause prohibited the second revocation hearing, and holds that in this case, a second revocation hearing would not violate due process. The linchpin of due process is fundamental fairness. A probation revocation hearing is administrative in nature. The ultimate question to be answered in the hearings is whether the probationer remains a "good risk." *State ex rel. Flowers v. Department of Health & Social Services,* 81 Wis.2d 376, 385, 260 N.W.2d 727 (1978). To make this determination, the Department must be able to consider the totality of the alleged violator's character, just as a judge does in setting a sentence. Given the nature and purpose of probation revocation proceedings, this Court concludes that the petitioner's limited due process rights do not preclude a second hearing in this case.

### III. COLLATERAL ESTOPPEL CLAIM

■ The petitioner also asserts that the second hearing is precluded by the doctrine of collateral estoppel. That doctrine is embodied in the fifth amendment's double jeopardy clause. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The petitioner argues that an analogous doctrine applies to this case through the due process clause.

This argument is simply a variation on the argument made above. The petitioner is arguing that the situation in this case is analogous to a double jeopardy violation in a second respect and that therefore the due process clause proscribes the second hearing. For the reasons that this Court rejects the petitioner's first argument, the second argument also fails.

THEREFORE, IT IS ORDERED that the petitioner's petition for a writ of habeas corpus is denied.