Curtis Lee THOMPSON,
Petitioner-Appellant,

v.

Linda REIVITZ, Secretary, Department of Health and Social Services, her agents, employees or those acting by her directions or in her behalf, and Franklin Lotter, Superintendent, Milwaukee House of Corrections, Respondents-Appellees.

No. 83–1849.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1983.
Decided Oct. 17, 1984.

Mary E. Waitrovich, Asst. State Public Defender, Madison, Wis., for petitioner-appellant.

Jeffrey M. Gabrysiak, Wis. Dept. of Justice, Madison, Wis., for respondents-appellees.

Before WOOD and CUDAHY, Circuit Judges, and KELLEHER, Senior District Judge.*

KELLEHER, Senior District Judge.

This is an appeal from an order of the United States District Court for the Eastern District of Wisconsin denying petitioner-appellant's petition for a writ of habeas corpus.

On October 9, 1978, petitioner-appellant Curtis Lee Thompson ("Thompson") was convicted of burglary in the Circuit Court for Milwaukee County, Wisconsin. The court withheld sentence and placed him on probation for a period of three years requiring him to serve six months in Wisconsin County jail. Nearly two years later, on July 13, 1980, Thompson was involved in a stabbing incident which resulted in the death of his brother. Thompson claimed that he had stabbed his brother to death in self-defense.

Thompson was arrested for his involvement in his brother's death but the charges were later dismissed. Respondent, the Wisconsin Department of Health and Social Services ("Department"), initiated probation revocation proceedings alleging that Thompson had violated the terms of his probation by causing his brother's death and by possessing a weapon, the kitchen knife, without prior consent of the probation agent. The revocation hearing was held and in 1980, Thompson's probation was revoked. Thompson then petitioned for writ of certiorari in the Circuit Court for Milwaukee County. This petition was dismissed by the court.

Thompson appealed the dismissal of the petition to the Wisconsin Court of Appeals claiming that his due process rights were violated by the probation revocation proceeding. The court reversed the order revoking Thompson's probation, finding that the probation revocation decision was not supported by substantial evidence since it was based solely on unsubstantiated hearsay. The Wisconsin Supreme Court affirmed the decision of the Court of Appeals on grounds not considered by the appellate court. The Supreme Court held that the probation revocation order must be reversed because there was both inadequate notice of the grounds upon which the revocation was based and insufficient evidence to meet the preponderance standard used in probation revocation proceedings.

In the course of its opinion, the Wisconsin Supreme Court made the following statement:

> If the department believes probation revocation is in order, it may seek a new petition for revocation and elicit additional evidence. The department remains free to offer any probation record that was prepared pursuant to a probation official's regularly conducted duties or police investigative material if demonstrated to be reliable. It may also wish to offer testimony from agent Hovel or from witnesses present at the stabbing incident.

Thompson immediately filed a motion for reconsideration seeking to have this state-

---

* Honorable Robert J. Kelleher, Senior District Judge, Central District of California, sitting by designation.

ment stricken from the opinion. The motion was denied without explanation.

The case was then remanded to the Circuit Court where the order revoking probation was vacated. A new probation hold was placed on Thompson, however, preventing his release from custody. He then received notice that the Department would seek to revoke his probation a second time as suggested by the Wisconsin Supreme Court. The violations were the same as those alleged in the first revocation proceeding. In the final hearing notice, the Department declared its intent to offer both documentary and testimonial evidence that had not been presented at the original probation revocation hearing. On January 17, 1983, the Department held a preliminary revocation hearing at which probable cause was found to revoke Thompson's probation for a second time. The final revocation hearing was held on June 6, 1983. Thompson was then sentenced to six years in prison with credit given for the time served after the first revocation proceeding was held.

Thompson filed his petition for a writ of habeas corpus on January 21, 1983 in the United States District Court claiming that the Due Process Clause prohibits the Department from revoking his probation a second time based upon the same events and evidence argued at the initial hearing and declared to be insufficient by the Wisconsin Supreme Court.

On February 10, 1983, Thompson filed a petition for writ of habeas corpus in the Circuit Court for Milwaukee County. Thompson thereafter, on July 12, 1983, filed a petition for writ of certiorari in the Circuit Court for Milwaukee. The petition for writ of certiorari is currently pending in the Circuit Court.

The District Court, in a published opinion, denied Thompson's petition for writ of habeas corpus. This appeal seeks to reverse the trial court order denying Thompson's petition for writ of habeas corpus.

■ Probation revocation hearings are not a part of the criminal prosecution which

results in imposition of the probationary period. *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). A probationer or parolee facing revocation is not entitled therefore to the full panoply of constitutional and statutory rights due a defendant facing a criminal prosecution. *Id.* at 489, 92 S.Ct. at 2604. *See also Gagnon v. Scarpelli*, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973) (extending due process rights recognized in *Morrissey* to probationers). In *Morrissey v. Brewer*, the Court held that the conditional liberty of a parolee is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. 408 U.S. at 480, 92 S.Ct. at 2600. In *Morrissey*, the Court outlined the minimum due process rights to which parolees are entitled: the right to notice, limited discovery, opportunity to be present and to offer evidence, confrontation, a neutral and detached hearing body and a written statement of the reasons for the revocation. 408 U.S. at 489, 92 S.Ct. at 2604.

■ Thompson's primary argument is that we ought to recognize a due process right not delineated by the *Morrissey* court, namely, some right to protection against "double jeopardy" from facing a second probation revocation proceeding for the same alleged probation violation after he prevailed in the first such proceeding.

In support of this position, Thompson cites a Wisconsin Supreme Court case which specifically held that a second probation revocation proceeding violates due process if based on evidence which was presented at the first proceeding and which was judged insufficient on appeal to support the revocation. *See Snajder v. State*, 74 Wis.2d 303, 246 N.W.2d 665 (1976).

In response the Department argues that the trial court correctly analyzed the situation in this case when it held:

A probation revocation hearing is administrative in nature. The ultimate question to be answered in the hearings is whether the probationer remains a "good risk." (citation omitted) To make this determination, the Department must be

able to consider the totality of the alleged violator's character, just as a judge does in setting a sentence. Given the nature and purpose of probation revocation hearings, this Court concludes that the petitioner's limited due process rights do not preclude a second hearing in this case.

*Thompson v. Reivitz*, 559 F.Supp. 554, 558 (E.D.Wis.1983). The District Court disagreed with and thereby refused to apply the rule announced by the Wisconsin Supreme Court in *Snajder*.

The role of this Court is to review the actions of the trial court to insure there was no constitutional error. *Jacks v. Duckworth*, 651 F.2d 480, 482 (7th Cir. 1981). Here it cannot be said that the lower court committed any constitutional error. It simply refused to extend the due process protections of *Morrissey* to include a double jeopardy bar in this situation. With that conclusion we concur.

### Collateral Estoppel Claim

█ Thompson argues further that the doctrine of collateral estoppel is embodied in the Fifth Amendment's double jeopardy clause and precludes the second revocation proceeding. He seeks thereby merely to restate his basic double jeopardy contention and adds nothing thereto. We concur in the District Court's conclusion that rejection of the double jeopardy argument disposes of this included contention.

### Exhaustion of State Remedies

The Department argues that the habeas petition was properly denied because Thompson failed to exhaust his state remedies. It is undisputed that a state prisoner must normally exhaust available state remedies before a writ of habeas corpus can be considered by the federal courts. 28 U.S.C. § 2254; *Rose v. Lundy*, 455 U.S. 509, 517, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982). This exhaustion requirement is codified in the federal habeas statute. 28 U.S.C. § 2254. State courts must be given a fair opportunity to apply controlling legal principles to the facts bearing on the state prisoner's constitutional claims. *Anderson*

*v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). In this case, the Department alleges that Thompson failed to give any state court the opportunity to review and adjudicate his due process or collateral estoppel claims. The Department argues that these claims did not arise until after the Wisconsin Supreme Court held that the original hearing violated due process and that the Department could attempt to revoke Thompson's probation once again.

Thompson argues that since the Wisconsin Supreme Court refused to strike the portion of the opinion indicating that the Department could hold another probation revocation hearing based upon the same evidence, the state courts have ruled on the issue. He also argues that even if the state courts did not rule on the issue, no lower court in the state of Wisconsin is likely to rule contrary to the statement by the Wisconsin Supreme Court in the exact same case. In concluding that Thompson exhausted his state remedies, the lower court stated:

The constitutional interest at stake and the [Wisconsin] supreme court's decision to allow a second revocation proceeding constitute circumstances rendering state corrective processes ineffective to protect the rights of the prisoner. Therefore, this Court concludes that the exhaustion requirement of 28 U.S.C. § 2254 has been satisfied by the petitioner in this case.

\*     \*     \*     \*     \*     \*

[G]iven the decision of the Wisconsin Supreme Court in this case, review of the petitioner's due process claims by the state courts would likely be ineffective.

559 F.Supp. at 557.

█ We affirm the lower court's holding that Thompson has exhausted his state remedies. The federal habeas statute allows for non-exhaustion of state remedies where circumstances exist rendering state remedies ineffective to protect the rights of the prisoner. *Young v. Ragen*, 337 U.S. 235, 238–39, 69 S.Ct. 1073, 1074, 93 L.Ed.

1333 (1949); *Montes v. Jenkins*, 581 F.2d 609, 611 (7th Cir.1978) ("[state] remedies must be effective to protect the rights of the prisoner"). In *Montes v. Jenkins, id.*, this Court found that a habeas petitioner's state remedies were ineffective in a situation remarkably similar to the current case. There, the Indiana Supreme Court had concluded that the petitioner had been adequately apprised of his constitutional right to court appointed counsel and had waived it on three separate occasions. Petitioner filed a petition for writ of habeas corpus which was denied on the ground that the prisoner had failed to exhaust his state remedies. In ruling that the petitioner had not failed to exhaust his effective state remedies, we noted that Indiana law would allow the state to defend against the petition on the grounds of prior adjudication or res judicata. *Id.* at 611. We concluded:

> The district court ruled, and the respondents contend, here, that [petitioners] had to present their claims to the Indiana courts by way of a Post-Conviction Remedy Rule 1 proceeding before instituting habeas corpus proceedings in federal court under § 2254. Had [petitioners] done so, we have no doubt that respondent would defend the Rule 1 proceeding on the grounds of prior adjudication on direct appeal or res judicata .... *Such a procedure would be futile and certainly would not be an effective state remedy.*

*Id.* (emphasis added). *See also United States ex rel. Williams v. Brantley*, 502 F.2d 1383, 1384–85 (7th Cir.1974) (state judicial interpretation of state post-conviction hearing statute mandating that issues decided in earlier appeal be given res judicata effect deprived petitioner of effective state remedies); *Opie v. Meacham*, 419 F.2d 465, 466 and 466 n. 1 (10th Cir.1969) (petitioner's state remedies would be ineffective since the state supreme court had already adversely decided on direct appeal issues petitioner was raising in habeas petition).

■ In this case, the Wisconsin Supreme Court has, in effect, held that respondent Department may properly pursue another probation revocation hearing based on the incidents leading to the first hearing. Lower Wisconsin courts are bound to follow the Wisconsin Supreme Court's decisions. *Livesey v. Copps Corp.*, 90 Wis.2d 577, 581, 280 N.W.2d 339 (Wis.Ct.App.1979). Hence, the state courts of Wisconsin will surely follow the Supreme Court and hold that another revocation proceeding is permissible. Therefore, further pursuit of state remedies would be futile. The exhaustion requirement has been met.

The order of the District Court is AFFIRMED.