**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KIM L. JOHNSON; SUN MIN LEE,
  *Plaintiffs-Appellees,*

v.

ANGELA WALTON,
  *Defendant-Appellant.*

Nos. 07-55935
07-56238
and
07-56547

D.C. No.
CV-05-06699-SJO

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
November 17, 2008—Pasadena, California

Filed March 13, 2009

Before: Myron H. Bright,* Stephen S. Trott, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Bright

*The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## COUNSEL

Thomas C. Hurrell and Melinda Cantrall, Los Angeles, California, for the appellant.

Donald G. Norris, Los Angeles, California, for the appellees.

## OPINION

BRIGHT, Circuit Judge:

This appeal arises from a 42 U.S.C. § 1983 complaint filed by appellees-plaintiffs Kim L. Johnson ("Kim") and Sun Min Lee ("Sun Min"), in which they were awarded damages from appellant-defendant Officer Angela Walton ("Officer Walton") for an illegal search and seizure of their personal property from their home and alleged detention in violation of the Fourth and Fourteenth Amendments. On appeal, Officer Walton argues that the district court erred by 1) concluding that the search warrant lacked probable cause or was otherwise invalid, 2) refusing to allow her to introduce evidence outside the warrant to show that she reasonably believed probable cause existed, 3) denying her request for qualified immunity,[1] and 4) awarding attorneys' fees to Sun Min and Kim.[2] We reverse the district court and determine that Officer Walton merits qualified immunity, and we vacate the attorneys' fees and expense awards.

## I.   FACTUAL BACKGROUND

Kim and Sun Min shared a residence and home with Sun Hi Lee ("Sun Hi") and Wilford Johnson ("Wilford"), who owned and operated a house of prostitution under the guise of a legitimate business named Oriental Acupressure. Kim, an aspiring professional golfer, is the adult son of Sun Hi and Wilford, and Sun Min, a homemaker, is Sun Hi's sister. All

---

[1]Parties intending to appeal the determination of qualified immunity must ordinarily appeal before final judgment. *See Price v. Kramer*, 200 F.3d 1237, 1243-44 (9th Cir. 2000). Here, however, Officer Walton lacked such an opportunity because the district court certified her interlocutory appeal on qualified immunity as forfeited. *See Chuman v. Wright*, 960 F.2d 105, 105 (9th Cir. 1992).

[2]Walton also argues that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars appellees' claims, but *Heck* does not apply because neither appellee was convicted of any crime.

four resided at a home located on Paseo De Castana in Rancho Palos Verdes, California.

Officer Walton, a sergeant in the Los Angeles County Sheriff's Department, served as one of the lead officers in investigating a prostitution ring in Los Angeles. In the summer of 2003, the investigation focused on JHJ Educational College, which was suspected of selling massage certificates fraudulently for $2,500 and arranging for the certificate holder to engage in prostitution.

During the course of the investigation, an undercover female officer, serving as a decoy, fraudulently bought a massage certificate from JHJ Educational College. The school's CEO told the decoy that a job could be arranged for her that paid $20,000 per month. The CEO further told the decoy that she needed to be careful of undercover officers, and if she detected such an officer, she should then only perform legitimate massage techniques. The CEO assigned the decoy to Oriental Acupressure and said that the owner of the business, later identified as Sun Hi (sister of Sun Min and mother of Kim), had much experience and "is familiar with how things are." The CEO also stated that the owner of the business would be contacted and told that the decoy would be reporting for work.

The decoy later went to Oriental Acupressure to meet with Sun Hi, the owner, where the decoy observed five or six scantily clad women leading men around the various rooms. The men wore nothing but small towels. The decoy also saw many of the women handing unspecified amounts of cash to Sun Hi. During the decoy's meeting with Sun Hi, Sun Hi asked her if she had any experience working in such a business and if she had sexual experience with men. Sun Hi told the decoy that she would be furnished with a regular customer.

During the operation, officers recorded the license plate of a black Mercedes Benz driven by a person fitting Sun Hi's

description. A Department of Motor Vehicles search of the license plate database showed that the registered owner was Sun Hi of Paseo De Castana, Rancho Palos Verdes, CA. On a separate occasion, Officer Walton drove by the Paseo De Castana home at approximately 6:30 p.m., observing that black Mercedes Benz parked in the driveway.

Based on the information resulting from the investigation, including lewd descriptions of men's prostitution experiences at Oriental Acupressure on a website that promoted houses of prostitution, Walton determined that Oriental Acupressure was a front for prostitution. Officer Walton requested a search warrant for JHJ Educational College and Star Health Center, Oriental Acupressure, a home on Lafeyette Park Place, the appellees' home on Paseo De Castana, cars parked at the home, and a business on S. Van Ness Avenue.

Officer Walton described all her information in the warrant application, which incorporated a "Statement of Probable Cause" ("SPC") and, in turn, incorporated various attached reports of an undercover Sheriff's Deputy named Y. Nam. The SPC essentially summarized Officer Walton's information regarding the investigation and particularly stated, "The manager of the [house of prostitution] forwards all monies charged for 'massage services' to the owner(s) of the location."

The warrant application also listed Sun Hi as the owner of Oriental Acupressure and included a "Statement of Affiant," in which Walton described her own seven-year employment with the Los Angeles County Sheriff's Department, her investigative work of approximately seventy massage parlors, and her extensive experience in assisting with the execution of search warrants.

In the additional, separate affidavit attached to the warrant, Officer Walton stated that the SPC was true and that based thereon she had probable cause to believe that the property

described in the warrant application was lawfully seizable. The locations to be searched included three business locations and two residences, one the residence of Kim and Sun Min and the other that of Sun Ok Joo, CEO of JHJ Educational College.

A magistrate judge reviewed the warrant application and approved the search warrant, finding that probable cause existed for the search. Sheriff's Department personnel other than Walton executed the search warrant. At Sun Hi and Wilford's residence, the officers found and seized $2,434,000 in cash in cardboard boxes. At Oriental Acupressure, the business establishment, they seized $1,020 and approximately 400 condoms. Interviews with customers and massage technicians revealed that customers engaged in prostitution with the massage technicians for $100.

## II.   PROCEDURAL BACKGROUND

In May 2004, Sun Hi and Wilford faced state criminal charges for multiple counts of pimping, pandering by procuring, and money laundering. The Superior Court suppressed the evidence seized at Sun Hi and Wilford's residence. In denying the *Leon* good faith exception, the Superior Court reviewed whether "an abundant level of sufficient probable cause" supported the warrant, instead of focusing on whether an "indicia of probable cause" existed to search the residence.

In June 2004, the Internal Revenue Service obtained a seizure warrant for $2,789,881.82, the cash previously seized by the Los Angeles County Sheriff's Department. These funds and others were later forfeited to the United States as part of a plea agreement by Sun Hi and Wilford to federal felony charges of attempting to defeat or evade income taxes. The state court criminal case was resolved based on the federal plea.

Sun Min and Kim, as plaintiffs, subsequently filed a 42 U.S.C. § 1983 action, seeking damages from Officer Walton,

four other members of the Los Angeles County Sheriff's Department, and the County of Los Angeles for violating their Fourth and Fourteenth Amendment rights through the search of their home in the course of the prostitution investigation.

Officer Walton and other defendants moved for summary judgment, which the district court granted in part. The court denied Officer Walton qualified immunity because, in its view, insufficient evidence existed "to establish a fair probability that any contraband or evidence of a crime might be found at [Sun Min and Kim's] residence [on Paseo De Castana]." The court determined, however, that a genuine issue of material fact still existed as to whether there was probable cause to search the residence.

The court subsequently granted Sun Min and Kim's motion for judgment as to Officer Walton.

Following a trial on the issue of damages only, a jury awarded Kim $80,000 for damages to his career as an aspiring professional golfer, and homemaker Sun Min $100 for her damages. The district court also awarded Kim and Sun Min $260,782.50 in attorneys' fees and expenses.[3]

Officer Walton timely appealed, arguing, as we have already noted, that probable cause existed for the search warrant and, if not, she should be allowed to introduce evidence outside the warrant to show that she reasonably believed probable cause existed. Walton also argues that she is entitled to qualified immunity and contests the attorneys' fees awarded to Sun Min and Kim.

## III.   ANALYSIS

We review the district court's determination of qualified immunity de novo. *Torres v. City of Los Angeles*, 548 F.3d

---

[3]The case against other defendants was dismissed by court orders.

1197, 1206 (9th Cir. 2008). We also review whether the *Leon* good faith exception applies de novo. *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988).

Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

**[1]** At the core of the Fourth Amendment is a person's right to be free from unreasonable governmental intrusion at home. *See, e.g.*, *Payton v. New York*, 445 U.S. 573, 589-90 (1980). Therefore, when a magistrate judge issues a warrant for the search of a residence, the judge must consider whether there exists a sufficient nexus between the residence and the contraband sought. For a warrant to issue, the judge must determine that it would be reasonable to seek the evidence at the residence. *See United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002).

**[2]** Even if a warrant lacks probable cause, however, the *Leon* good faith exception preserves the reasonableness of the subsequent search unless the warrant is so lacking in indicia of probable cause so as to render official belief in its existence entirely unreasonable. *See United States v. Leon*, 468 U.S. 897, 923 (1984); *see also Ortiz v. Van Auken*, 887 F.2d 1366, 1371 (9th Cir. 1989) ("*Leon* teaches that inadequate probable cause does not necessarily render a warrant facially invalid nor prevent reasonable belief in the existence of probable cause.").

Furthermore, the *Leon* standard guides the determination of whether an officer is entitled to qualified immunity from

§ 1983 liability. Officers lose their shield of qualified immunity "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (*citing Leon*, 468 U.S. at 923); *see also KRL v. Estate of Moore*, 512 F.3d 1184, 1189-90 (9th Cir. 2008).

**[3]** In this case, based on the record, Officer Walton's belief that probable cause existed to search Sun Hi and Wilford's home on Paseo De Castana was not unreasonable. The police investigation, as documented in the warrant application, indicated that Oriental Acupressure served as a house of prostitution. The warrant application also noted that typically "[t]he manager of the [house of prostitution] forwards all monies charged for 'massage services' to the owner(s) of the location." The warrant application then stated that the owner of the house of prostitution, Sun Hi, resided at Paseo De Castana. As the warrant application makes clear, investigators uncovered this information by observing a person of Sun Hi's description driving a 2001 black Mercedes Benz, which Officer Walton saw parked in the driveway of the Paseo De Castana residence. Significantly, a Department of Motor Vehicles search based on the license plate revealed that the owner of the Mercedes Benz, Sun Hi, resided at the Paseo De Castana address. Finally, the warrant application elaborated upon Officer Walton's lengthy experience as a detective with the Los Angeles County Sheriff's Department. During the nineteen months prior to filing the instant warrant application affidavit, Officer Walton had participated in approximately seventy massage parlor investigations and assisted in the execution of numerous search warrants. On these undisputed facts, the warrant application was not so lacking in indicia of probable cause so as to render unreasonable Officer Walton's belief that she could validly apply for a search warrant.

**[4]** A better warrant application in this case would have explicitly stated that, in Officer Walton's investigative experience, she knows that owners of prostitution houses often keep

evidence of these illegal businesses, including money from the businesses, in their homes. Nevertheless, Walton's affidavit is not so lacking in indicia of probable cause so as to render a reasonable officer's belief in the existence of probable cause unreasonable. *See KRL*, 512 F.3d at 1190 ("Our cases repeatedly emphasize this distinction between warrants with disputable probable cause and warrants so lacking in probable cause that no reasonable officer would view them as valid."). Here, the *Leon* exception therefore applies and Officer Walton is entitled to qualified immunity from suit. *See Leon*, 468 U.S. at 923; *Malley*, 475 U.S. 344-45. In light of our holding, we do not reach Officer Walton's other arguments.

## IV.   CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment denying Officer Walton qualified immunity, **REMAND** for dismissal of the action, and **VACATE** the award of attorneys' fees and expenses in favor of Sun Min and Kim.